IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| Nolan Bridgewater,<br><br>    Plaintiff,<br><br>v.<br><br>Northrop Grumman Ship Systems, Inc.,<br><br>    Defendant. | No. 1:06-cv-00769-LG-RHW<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**<br><br>(Civil Rights-Employment)<br><br>Jury Trial Demanded |

**PRELIMINARY STATEMENT**

1.      This action seeks injunctive and declaratory relief to prevent continuing, systemic, and unjustified race discrimination by the employer, NORTHROP GRUMMAN SHIP SYSTEMS, INC. ("NGSS"), with regard to the retention, terms and conditions of employment, treatment, and promotion and transfer of Black employees at NGSS, including severe, pervasive, and ongoing harassment of Black employees through longstanding maintenance of a racially hostile work environment.  In addition to injunctive and declaratory relief, and all other available equitable relief, plaintiff seeks compensatory and punitive damages.

**JURISDICTION**

2.      This suit is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"); and Civil Rights Act of 1866, 42 U.S.C. § 1981 ("1981").  Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. §§ l343 (3)&(4); 28 U.S.C. § 1331 and 28

Plaintiff Nolan Bridgewater's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00769-LG-RHW

U.S.C. § 1337.  Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 & 2202.

## PARTIES

3. Nolan Bridgewater was a Black employee of NGSS who was employed by NGSS for over 22 years.  Mr. Bridgewater retired from NGSS on or about October 30, 1997.

4. NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a business that is engaged in the construction and refurbishing of seagoing vessels, both military and civilian.  It is located in Pascagoula, Mississippi.  It is an employer for purposes of Title VII.  On the basis of information and belief, plaintiff alleges that NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a successor in interest to INGALLS SHIPBUILDING COMPANY.

5. NGSS has received numerous contracts and substantial income from agencies and departments of the Federal Government, and because of the receipt of said contracts and income it is subject to Title VI of the Civil Rights Act of 1964, as amended. NORTHROP GRUMMAN SHIP SYSTEMS, INC., and its predecessor, INGALLS SHIPBUILDING COMPANY, therefore are, and have been, a federal contractor at all times relevant.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. All conditions precedent to jurisdiction pursuant to section 706 of Title VII of the Civil Rights Act of 1964, as amended, have been complied with to wit:  an appropriate charge of employment discrimination has been filed with the Equal Employment Opportunity Commission, and a notice of right to sue was issued by the Equal Employment Opportunity Commission.

7. Plaintiff has filed a timely complaint based on the time limits contained in section 706 of Title VII of the Civil Rights Act of 1964, as amended.

Plaintiff Nolan Bridgewater's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00769-LG-RHW

8. On or about December 20, 2000, the Equal Employment Opportunity Commission issued a determination finding reasonable cause to believe that a racially hostile work environment existed at NGSS.

9. Attempts at conciliation regarding the finding of a racially hostile work environment, which was and is statutorily required, failed.

## PROCEDURAL BACKGROUND PRECEDING THIS COMPLAINT

10. An initial complaint was filed in the United States District Court for the Southern District of Mississippi on March 21, 2001, in which eleven (11) persons, named as representative plaintiffs, and the organization, Ingalls Workers for Justice, alleged class-wide discrimination at NGSS on the basis of race. The case was assigned a case number of 1:01-CV-111(G)(R).

11. A First Amended Complaint was filed on April 26, 2001 in the initial case, additionally alleging maintenance of a racially hostile work environment at NGSS.

12. A Complaint in Intervention was filed on February 13, 2003 in the initial case, necessitated by the Court's dismissal of the following causes of action and parties from the First Amended Complaint on February 28, 2002:

   a) Dismissal of the class action allegations seeking compensatory and punitive damages;

   b) Dismissal of the claim for relief alleged pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*;

   c) Dismissal of the claim for relief alleged pursuant to the Thirteenth Amendment to the U.S. Constitution;

   d) Dismissal of organizational plaintiff INGALLS WORKERS FOR JUSTICE;

   e) Dismissal of defendant LITTON INDUSTRIES; and

   f) Dismissal of defendant NORTHROP GRUMMAN.

13. A Second Amended Complaint was filed on April 7, 2003 in the initial

Plaintiff Nolan Bridgewater's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00769-LG-RHW

case.

14. On or about March 16, 2004, the initial case was reassigned to the Honorable Louis Guirola, Jr., District Court Judge; on December 30, 2004, the Honorable Robert H. Walker, Magistrate Judge, was assigned to be the Magistrate Judge for the initial case.

15. On August 17, 2006, Magistrate Judge Walker entered an order entitled, "Order Requiring Separate Complaints," which, *inter alia*, severed the plaintiffs' claims from one another, and required the filing of new complaints and assignment of new case numbers for each of the individual plaintiffs in Case No. 1:01-CV-111(LG)(RHW).

16. At some point during the period of time from August 17, 2006 through September 7, 2006, plaintiff Nolan Bridgewater's severed action was assigned the case number of 1:06-cv-00769-LG-RHW.

## FACTUAL STATEMENT

## RACIAL DISCRIMINATION GENERAL ALLEGATIONS

17. The defendant, NGSS, has intentionally pursued and continues to pursue employment policies and practices that constitute systemic discrimination against plaintiff and other Black employees and that deprive or tend to deprive such persons of equal employment opportunities within NGSS. NGSS has intentionally implemented these policies and practices, among other ways, as follows:

   a) By failing to treat Blacks on an equal basis with Whites.

   b) By using selection devices for promotions that have an adverse impact on Blacks, are not job related and have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures, and have more adverse impact than equally valid alternatives.

   c) By using evaluation procedures in the consideration of employees for promotions that discriminate against or illegally exclude Black employees from consideration.

Plaintiff Nolan Bridgewater's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00769-LG-RHW

d) By failing to provide Black employees with equal opportunities for advancement within the company because of their race. Black employees are denied promotions despite their qualifications and years on the job. It is not uncommon for a Black employee to be denied a promotion at NGSS in an area she or he has worked in for twenty years and then be assigned to train a White employee with less seniority.

e) By maintaining a double standard in the granting of promotions to White employees vis à vis Black employees. Practices including cronyism, nepotism, word-of-mouth recruitment, failure to post or advertise employment opportunities, and/or the placement of White employees in acting positions have inured to the determent of Black employees historically.

f) By restricting access to employment opportunities for Black employees and maintaining a workforce in which its supervisory and management personnel has been and continues to be predominately White.

g) By engaging in a policy in which positions are actually filled even before they may be posted or advertised as an available position.

h) By demoting Black employees at a disproportionate rate as compared to White employees.

i) By retaliating against Black employees after they have complained or challenged, in any way, the discriminatory policies, procedures, and practices that permeate the work environment at NGSS.

j) By denying Black employees opportunities to go on trips or sea trials where they would be able to earn substantial amounts of overtime.

k) By maintaining a practice of "job steering," resulting in Black employees being assigned to, and then denied the opportunity to move out of, dangerous, dirty, and generally less desirable work areas because of their

Plaintiff Nolan Bridgewater's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00769-LG-RHW

     race.

   l) By instituting and allowing the continuance of a racially hostile work environment for Black employees.

  18. This pattern or practice denies the full exercise of rights secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

  19. NGSS has been aware that its actions with regard to the treatment of Black employees were and are in violation of federal statutes prohibiting discrimination on the basis of race.

## SPECIFIC CLAIMS FOR RELIEF
## TITLE VII AND § 1981

  20. Plaintiff incorporates paragraphs 1 through 19, as though fully set forth herein.

  21. Other than holding a leaderman position for two brief periods of no more than three months each time, Plaintiff has never been promoted in spite of plaintiff's twenty-two years at NGSS. Plaintiff has continuously and repeatedly applied for promotive positions, or positions that would have paid more and involved cleaner work, and was qualified for the positions for which he applied, but was never selected. Plaintiff believes he was denied transfers and promotions because of his race, even though Shorty White, a supervisor, and Bobby Mitchell, general foreman told him that he did not get certain promotions because he was too valuable to the paint department. Each time he took the test, Plaintiff was told he received the lowest mark possible, although he knows he passed. Bobby Mitchell, general foreman, also told Plaintiff he would not get a transfer no matter what he did. Defendant engaged in a course of conduct that extended over a decade, and resulted in the complete denial of Plaintiff's promotional opportunities. The means used to determine plaintiff to be unqualified have never been

Plaintiff Nolan Bridgewater's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00769-LG-RHW

validated pursuant to the Uniform Guidelines on Employee Selection Procedures. This has occurred in the following instances:

 a) On or about 1986, plaintiff applied for a promotion to Supervisor, a position for which plaintiff was qualified, but for which he was not selected because of his race.

 b) In or about 1986, plaintiff applied for a position in the 29 department, Tests and Trials. While Plaintiff was denied a transfer, White employees, with considerably less seniority than the Plaintiff, were given transfers.

 c) On or about 1987, plaintiff applied for Stencilman, a position for which plaintiff was qualified, but for which he was not selected because of his race.

 d) In or about 1988, Plaintiff again applied for a position in Tests and Trials, a position for which plaintiff was qualified, but for which he was not selected because of his race.

 e) On or about 1989, plaintiff applied for a Rigger position, a position for which plaintiff was qualified, but for which he was not selected because of his race.

 f) On or about 1990, plaintiff again applied for a position in Tests and Trials, a position for which plaintiff was qualified, but for which he was not selected because of his race.

 g) On or about 1994, plaintiff applied for a pipefitter position, a position for which plaintiff was qualified, but for which he was not selected because of his race.

 h) In 1997, Plaintiff again applied for position in Tests and Trials, a position for which plaintiff was qualified, but for which he was not selected because of his race.

Plaintiff Nolan Bridgewater's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00769-LG-RHW

22.     Plaintiff has worked for 22 years in one or more of the departments at NGSS utilizing a position entitled "leaderman" or "half-hat." Based upon information and belief, plaintiff hereby alleges that no formal means of applying for the position of "leaderman" or "half-hat" at NGSS exist. Plaintiff has made it known that he has been interested in being selected for the position of "leaderman "or "half-hat," however, plaintiff has only served in that position for two brief periods of no more than three months each in 1992 and in 1993, for which he did not receive full leaderman salary, in spite of his 22 years at NGSS. Plaintiff has not been informed in any way that he was not qualified for the position of "leaderman" or "half-hat." The means used to determine that plaintiff would not be selected for a position, for which he was and is qualified, have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures. This has occurred in the following instances:

    a)  In or about 1984, plaintiff applied for leaderman, a position for which plaintiff was qualified, but for which he was not selected because of his race.

23.     Other than holding a leaderman position for two brief periods of no more than three months each time, Plaintiff has never been promoted in spite of plaintiff's 22 years at NGSS. Plaintiff has observed both that Black employees are not promoted in spite of their qualifications and seniority as well as the lack of qualifications of White employees who have been promoted. Because of this observation and his own repeated and unsuccessful attempts at promotion, Plaintiff has not applied for promotive positions for which he was qualified, and plaintiff has never been selected for promotion to any such position. Plaintiff has also observed that the availability of positions was not always publicized. The means used to determine that plaintiff would not be selected for a position, for which he was and is qualified, have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

24.     Plaintiff has been laid off at times during which similarly situated White

Plaintiff Nolan Bridgewater's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00769-LG-RHW

co-workers with fewer years of seniority were not laid off. Plaintiff was told he was laid off because of a reduction in force, but was not informed of the reason why he was laid off while White co-workers with fewer years of seniority were allowed to transfer of other departments to avoid layoff. Plaintiff has been laid off under such circumstances in the following instances:

    a) On or about March 1983, plaintiff was laid off from the position of first-class painter. At the time plaintiff was laid off, plaintiff's seniority in the company was 8 years, and as a first-class painter was 8 years. White co-workers with fewer years of seniority were not laid off at that time.

    b) On or about June 1984, plaintiff was laid off from the position of first-class painter. At the time plaintiff was laid off, plaintiff's seniority in the company was 9 years, and as a first-class painter was 9 years. White co-workers with fewer years of seniority were not laid off at that time.

    c) On or about August 1989, plaintiff was laid off from the position of first-class painter. At the time plaintiff was laid off, plaintiff's seniority in the company was 14 years, and as a first-class painter was 14 years. White co-workers with fewer years of seniority were not laid off at that time.

25.    Plaintiff has been subjected to racial job tracking that assigns Black employees at NGSS at a disproportionate rate as compared to White employees to the most undesirable, dirtiest, and dangerous employment environments in the workplace. Plaintiff has been assigned to such employment environments in the following instances:

    a) As recently as 1997, Plaintiff has been forced to work in dirty conditions while similarly situated White employees were allowed to work in more comfortable conditions. Many of these jobs were done under extremely hazardous conditions, without protective equipment, including properly equipped respirators.

    b) From 1975, when he first hired in at NGSS, until he went out on disability,

Plaintiff Nolan Bridgewater's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00769-LG-RHW

>Plaintiff also made several visits to the hospital due to spray paint getting in his eyes, even though Plaintiff wore safety goggles. Plaintiff contends he was assigned to work in an unsafe area that did not have the proper hood for spray painting. Plaintiff complained to Supervisor Frisco about getting a closed-face hood for spray painting because the spray was coming back in on Plaintiff's eyes. As a result of Plaintiff's complaint, after 23- 24 years, the Defendant finally installed a closed-face hood. Plaintiff did not complain to anyone else because he felt it would have been futile.

26. Plaintiff has been subject to the practice of forcing Black employees disproportionately as compared to White employees to work with injuries, without reasonable accommodation of disabilities, or without provisions being made for medically imposed work restrictions. This has occurred in at least the following instances:

>a) In 1991 Plaintiff injured his knees and back, and was prevented from going to the hospital by his Supervisor until he completed the job on which he was injured.

27. Plaintiff has been retaliated against or suffered adverse consequences for opposing NGSS's discriminatory employment practices, in violation of Title VII and § 1981. Such retaliation has occurred as a result of Plaintiffs' complaints about differential race-based treatment with regard to assignments, discipline, racially derogatory graffiti, and allowance of overtime, and suffered retaliation in the form of involuntary shift transfers and work assignment transfers.

28. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to offensive racially derogatory writings, depictions, and/or graffiti on a constant basis in a number of places at NGSS during the entire time he worked at NGSS, and such writings included the word "Nigger," and

Plaintiff Nolan Bridgewater's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00769-LG-RHW

references to recruitment for the KKK.  NGSS knows or should have known of the presence of offensive racially derogatory writings, depiction, and/or graffiti in its workplace, but has failed to take steps to prevent or correct promptly its occurrence.  Plaintiff has complained about being subjected to the offensive racially derogatory writings, depictions, and/or graffiti, but the response has always been insufficient to remedy the situation.  Plaintiff has not complained about each and every instance of having been exposed to the offensive racially derogatory writings, depictions, or graffiti because plaintiff believed it would be useless so to do, given the historical lack of sufficient response on the part of NGSS.

29.     Plaintiff has been subjected to a hostile work environment based on plaintiff's race.  Plaintiff has been exposed to White supervisory personnel and White non-supervisory employees using the term "nigger" or other racial epithets, including in jokes, on a constant basis in a number of places at NGSS.  NGSS knows or should have known about use of the term "nigger" and other racial epithets by White supervisory personnel and White non-supervisory employees, but has failed to take steps to prevent or correct promptly its occurrence.  Plaintiff has complained about being subjected to such offensive racial epithets, but the response has always been insufficient to remedy the situation.  Plaintiff has not complained about each and every instance of having heard this or other racial epithets because plaintiff believed it would be useless so to do given the historical lack of sufficient response on the part of NGSS.   Such exposure includes the following instances:

    a) In 1980, a White Supervisor told Plaintiff "Nigger, you need to get your ass in gear."

    b) In or around 1987, Plaintiff was told by a White employee that he would have a noose dropped on him because the worker had "never worked for a nigger before."

    c) In 1989, Plaintiff heard a General Foremen, Bobby Mitchell, say "Those

Plaintiff Nolan Bridgewater's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00769-LG-RHW

niggers down there not working hard enough."

d) In 1989, another General Foremen, Donnie Ladner, addressed Plaintiff as "nigger," in the engine room on an LHD boat. When Plaintiff complained to the Union, Donnie Ladner retaliated against him by transferring him to the DD boat and having another employee stand over him and watch him all day while Plaintiff worked. Plaintiff did not complain because he believed it would be futile to do so.

e) In 1997, two White workers at the shipyard called plaintiff "nigger". Plaintiff complained to his union steward, and to his supervisor, but the response was insufficient to remedy the situation.

f) Another White supervisor told Plaintiff "Those niggers need to tighten up."

g) Plaintiff heard another White Supervisor say ""Niggers, y'all don't come off the boat till I tell you to come off the boat."

h) In 1988, a White co-worker addressed Plaintiff as "nigger," when the worker wanted Plaintiff to unhook his extension cord from a plug. Plaintiff did not complain at that time because, based on NGSS's historical response, plaintiff believed that the response would be insufficient to remedy the situation and because plaintiff believed he would be subjected to retaliation for complaining. However, NGSS was or should have been aware of the use of the language because Plaintiff had complained on a number of occasions to Human Resources/Labor Relations about the disparate treatment and hostile work environment.

30. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to nooses in a number of places at NGSS. NGSS knows or should have known about the presence of nooses, both actual and depicted in drawings, at its workplace, but has failed to take steps to prevent or correct

Plaintiff Nolan Bridgewater's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00769-LG-RHW

promptly its occurrence. Plaintiff has complained about seeing these nooses, but the response has always been insufficient to remedy the situation. Plaintiff has not complained about each and every instance of having seen nooses at NGSS because plaintiff believed it would be useless to do so, given the historical lack of sufficient response on the part of NGSS.   Such exposure includes the following instances:

    a) Plaintiff has observed nooses in a helo hanger deck, in a captain's cabin, hanging from a light lens, and several other locations on the ships and in the shipyard. He also observed white employees making a noose.

32. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. The hostile work environment comprises and/or has culminated in the adverse treatment described in paragraphs 17 through 27, incorporated as though fully set forth herein.

33. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been and is aware of the fact of presence of offensive racially derogatory writings, depictions, and/or graffiti; ubiquitous use of the word "nigger" and other racist epithets; and nooses at NGSS.

34. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been and is aware of the fact that Black employees have not been provided equal opportunity with regard to upward job mobility.

35. The hostile work environment based on race to which plaintiff has been exposed is of a continuing and ongoing nature and constitutes a continuing violation of Title VII and § 1981.

36. NGSS has failed to take steps to remedy and correct promptly the harassing behavior occurring in its workplace. NGSS has failed to promulgate, disseminate, and enforce adequately an anti-harassment policy and failed to provide sufficient training to its employees regarding same. NGSS has failed to respond sufficiently to complaints regarding the harassment as set forth in paragraphs 28 through

Plaintiff Nolan Bridgewater's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00769-LG-RHW

35, incorporated as though fully set forth herein.

## APPROPRIATENESS OF EQUITABLE RELIEF

37.     Plaintiff will suffer irreparable injury if the declaratory and injunctive relief requested herein is not granted, because NGSS will make employment decisions on the basis of the discriminatory procedures and practices described herein or will not remediate the racially hostile work environment that exists in its workplace. If NGSS is not enjoined from engaging in discriminatory employment practices, plaintiff will be deprived of career opportunities, which plaintiff otherwise would have been able to pursue, but for NGSS's discriminatory employment practices.

38.     No plain, adequate, or complete remedy at law is available to plaintiff. The loss of promotional opportunities, experience, and careers with NGSS cannot be adequately compensated by monetary relief.  Similarly, the continued subjection to a racially hostile work environment cannot be adequately compensated by monetary relief.

39.     Unless restrained by order of this Court, NGSS will continue to pursue policies and practices, which are the same as, or similar to those alleged above.

## FIRST CLAIM FOR RELIEF

40.     Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 39 and further alleges for a first claim for relief as follows:

41.     Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS.  NGSS's unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.

## SECOND CLAIM FOR RELIEF

42.     Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 41 and further alleges for a second claim for relief as follows:

Plaintiff Nolan Bridgewater's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00769-LG-RHW

43. Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS. NGSS's unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

## THE APPROPRIATENESS OF COMPENSATORY AND PUNITIVE DAMAGES

44. Defendant NGSS has caused plaintiff emotional distress and mental anguish as a proximate result of its illegal practices, and plaintiff is entitled to compensatory damages pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

45. Similarly, defendant NGSS was aware that its actions with regard to plaintiff were in violation of federal statutes prohibiting discrimination on the basis of race, and therefore, plaintiff is entitled to punitive damages.

## PRAYER

WHEREFORE, plaintiff prays that this Court:

a) Declare pursuant to 28 U.S.C. §§ 2201 & 2202 the employment practices set forth in paragraphs 17 through 45 to be unlawful and in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* and the Civil Rights Acts of 1866, as amended, 42 U.S.C. § 1981;

b) Adjudge, decree, and declare that the practices of NGSS complained of herein are violative of the rights secured to plaintiff by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981;

c) Grant equitable relief, including, but not limited to, back pay, sick pay, vacation pay, disability benefits, and seniority rights to plaintiff;

d) Grant such punitive, general, and special damages as proved at trial;

Plaintiff Nolan Bridgewater's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00769-LG-RHW

    e) Award plaintiff the costs and litigation expenses of this action and reasonable attorneys' fees as provided for in section 706(k) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(k), and the Civil Rights Attorneys Fees Award Act of 1976, as amended, 42 U.S.C. § 1988; and

    f) Grant such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff hereby demands a trial by jury.

Dated: September 29, 2006

    SANDRA JARIBU HILL, Esq.
    Mississippi Workers' Center for
        Human Rights

    WILLIAM C. MCNEILL, III, Esq.
    The Legal Aid Society-Employment
        Law Center

    Counsel for Plaintiffs

    By:   /s/ William C. McNeill, III
          WILLIAM C. McNEILL, III, Esq.

William C. McNeill, III, Esq., MS Bar No. 42867, *Pro Hac Vice*
Denise M. Hulett, Esq., MS Bar No. 44672, *Pro Hac Vice*
Shelley A. Gregory, Esq., MS Bar No. 43443, *Pro Hac Vice*
The Legal Aid Society – Employment Law Center
600 Harrison Street, Suite 120
San Francisco, California 94107
(415) 864-8848

Sandra Jaribu Hill, Esq., MS Bar No. 10684
Mississippi Workers Center for Human Rights
213 Main Street
P.O. Box 1223

Plaintiff Nolan Bridgewater's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00769-LG-RHW

Greenville, Mississippi  38702-1223
(662) 334-1122

Plaintiff Nolan Bridgewater's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00769-LG-RHW

**CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2006, I electronically filed the foregoing with the Clerk of the Court using the ECF System which sent notification of such filing to the following: Paul B. Eason; Maria Candace Burnette; Timothy W. Lindsay; Stephen A. Brandon.

I hereby certify that I have mailed by United States Postal Service the documents to the following non-ECF participants:

Tammi Liddell
3836 Prentiss St.
Moss Point, MS  39563

Willie B. Richmond
1608 Timberlane Road
Gautier, MS  39553

Edna M. Tubbs
P.O. Box 501
Escatawpa, MS  39552


      /s/ Laurel Kapros
Laurel Kapros

Plaintiff Nolan Bridgewater's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00769-LG-RHW