**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **NOLAN BRIDGEWATER** | § | **PLAINTIFF** |
| | § | |
| **v.** | § | **Civil No. 1:06CV769HSO-JMR** |
| | § | |
| **NORTHROP GRUMMAN SHIP** | § | |
| **SYSTEMS, INC.** | § | **DEFENDANT** |

<u>**ORDER AND REASONS GRANTING DEFENDANT'S MOTION TO
SUBSTITUTE EXHIBITS AND GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

BEFORE THE COURT is the Motion for Summary Judgment filed April 20,

2007 [419-1], in the above-captioned cause by Defendant, Northrop Grumman Ship

Systems, Inc. ["Defendant"].  In opposition to Defendant's Motion, Plaintiff Nolan

Bridgewater ["Plaintiff"] filed a Response [455-1], and Defendant filed a Rebuttal

[480-1] in support of its Motion.  Also before the Court is Defendant's Motion to

Substitute Exhibits in Support of its Motion for Summary Judgment filed August

20, 2007 [458-1].  Plaintiff filed a Memorandum in Opposition [485-1], and

Defendant filed a Rebuttal [490-1] in support of its Motion.  After consideration of

the submissions and the relevant legal authorities, the Court finds that both

Defendant's Motion for Summary Judgment [419-1] and Defendant's Motion to

Substitute Exhibits [458-1] are well taken and should be granted.

I. <u>FACTS AND PROCEDURAL HISTORY</u>

An initial Complaint [1-1] was filed in this Court on March 21, 2001, and a

First Amended Complaint was filed on April 26, 2001, naming eleven (11)

individuals and the Ingalls Workers for Justice as Plaintiffs.  Plaintiff Nolan
Bridgewater was not a named Plaintiff in the original suit.  Named Defendants
were Ingalls Shipbuilding, Inc.; Litton Industries; and Northrop Grumman.  All
three Defendants filed a Motion to Dismiss [7-1] on June 20, 2001, pursuant to
Federal Rule of Civil Procedure 12.   As detailed in its Memorandum Opinion [16-1]
of February 27, 2002, and pursuant to its Judgment of February 28, 2002 [17-1], the
Court dismissed Plaintiffs' Thirteenth Amendment and Title VI claims, dismissed
Litton Industries and Northrop Grumman as Defendants; dismissed Ingalls
Workers for Justice as a Plaintiff; and dismissed Plaintiffs' class action claims.   In
their Motion to Alter or Amend Judgment filed on March 14, 2002 [18-1], remaining
Plaintiffs moved the Court to reconsider its entry of judgment dismissing Plaintiffs'
class action allegations, and in their Motion for Entry of a Separate Judgment filed
April 22, 2002 [23-1], remaining Plaintiffs sought to appeal the Court's prior order.
The Court denied both of these Motions by Order entered on July 10, 2002 [26-1].

On July 16, 2002, by way of a Motion for Leave to File a Complaint in
Intervention [27-1], putative class members requested leave to intervene as
Plaintiffs in this action, pursuant to Federal Rule of Civil Procedure 24.  For the
first time, Plaintiff Nolan Bridgewater was identified as a putative class member
and as a Plaintiff-Intervenor in the proposed "Complaint in Intervention for
Declaratory Judgment and Injunctive Relief and Damages," attached as Exhibit "A"
[27-2] to the Motion for Leave to File a Complaint in Intervention.  The Court

granted leave to amend on January 28, 2003 [40-1], and the Complaint in Intervention was filed on February 13, 2003 [42-1], naming an additional 171 Plaintiffs-Intervenors, including Plaintiff Nolan Bridgewater.  On April 7, 2003, with leave of Court, Plaintiffs filed a Second Amended Complaint [48-1].

On May 8, 2003, Defendant filed a Motion to Sever [50-1], seeking to sever each individual Plaintiff's claim[s] into a separate case, consolidated solely for the purpose of discovery, which the Court denied, without prejudice, pursuant to an Order signed March 31, 2004 [56-1].  On June 30, 2006, the Court issued an Order to Show Cause [330-1] as to why Plaintiffs' claims should not be severed into separate causes of action.   Plaintiffs filed their Response [342-1] to this Order on July 20, 2006, and Defendant subsequently filed a Motion to Sever on August 4, 2006 [349-1], which was granted by this Court on August 17, 2006 [360-1], and which required Plaintiffs to file separate complaints.

Plaintiff Bridgewater filed his Amended Complaint for Injunctive and Declaratory Relief and Damages against Defendant Northrop Grumman Ship Systems, Inc.,[1] on September 29, 2006 [362-1].  Defendant filed its Answer on October 18, 2006 [364-1].  Defendant filed the instant Motion for Summary Judgment on July 13, 2007 [419-1], to which Plaintiff filed a Response [455-1]. Defendant subsequently filed a Rebuttal [480-1] in support of its Motion.  Also, on

---

[1] Counsel for Defendant Ingalls Shipbuilding, Inc., filed a Notice of Name Change in the original action on August 15, 2002 [31-1], wherein Defendant's name in the style of the case was changed to "Northrop Grumman Ship Systems, Inc."

August 20, 2007, Defendant filed its Motion to Substitute Exhibits in Support of its

Motion for Summary Judgment [458-1].  Plaintiff filed a Memorandum in

Opposition [485-1], and Defendant filed a Rebuttal  [490-1].

## II. DISCUSSION

A.  Defendant's Motion to Substitute Exhibits

In its Motion to Substitute Exhibits, Defendant seeks to substitute

authenticated documents to replace identical exhibits that were originally attached

to Defendant's first Motion for Summary Judgment.  Plaintiff responds that "it is

too late to allow for such an exhibit exchange given Defendant's failure to adhere to

the pleading requirements regarding motions in general pursuant to Rules [sic] 6,

and motions specifically related to Rule 56 of the Federal Rules of Civil Procedure."

Pl.'s Mem. in Opp'n to Def.'s Mot. to Substitute Exs., p. 2.

Plaintiff cites Federal Rules of Civil Procedure 6(d) and 56(e), and asserts

that "[i]t is Black letter Law that District courts are to require that documents

submitted in support of summary judgment motions are to be accompanied with

affidavits that attest personal knowledge and identify and authenticate each

document."  Pl.'s Mem. in Opp'n to Def.'s Mot. to Substitute Exs., p. 4.  Plaintiff

does not controvert the authenticity of the documents, but rather the failure of the

Defendant to authenticate the documents or formally allege their authenticity.

Defendant attempts to cure this alleged procedural defect by filing the present

Motion to Substitute.  Plaintiff also contends that failure to include an affidavit

with Defendant's Motion for Summary Judgment dictates that the Motion should be denied.  *See* Pl.'s Mem. in Supp. of Opp'n to Def.'s Mot. for Summ. J., pp. 5-6.

In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), while the Supreme Court stated that "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact," *id.* at 323, the Court nevertheless found

> no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim. On the contrary, Rule 56(c), which refers to 'the affidavits, *if any*' (emphasis added), suggests the absence of such a requirement. And if there were any doubt about the meaning of Rule 56(c) in this regard, such doubt is clearly removed by Rules 56(a) and (b), which provide that claimants and defendants, respectively, may move for summary judgment '*with or without supporting affidavits*' (emphasis added). The import of these subsections is that, regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied. One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose.

*Id.* at 323-24.

Plaintiff argues that the Bankruptcy Court documents submitted by Defendant as exhibits cannot be considered by this Court without an affidavit identifying and authenticating them.  As opposed to the article that was questioned

by the Fifth Circuit as competent summary judgment proof in the one Fifth Circuit case cited by Plaintiff for this proposition, *Pennington v. Vistron Corp.*, 876 F.2d 414, 426 (5th Cir. 1989), Defendant in the present case attaches court documents, which are clearly distinguishable.  Moreover, the Court may, and does, take judicial notice of the facts contained in the Bankruptcy Court's records pursuant to Federal Rule of Evidence 201(b)(2).

Regardless of whether Defendant erred by failing to include authenticated documents as exhibits to its original Motion for Summary Judgment, Defendant has moved to replace the exhibits with identical, authenticated documents, curing any alleged defect.  Plaintiff's objections regarding reliance upon unauthenticated documents in his Response to Defendant's Motion for Summary Judgment are now moot.  Because the Court finds that the exhibits that Defendant seeks to substitute in place of the original exhibits are identical, with the addition being a certification of authenticity, the Court finds no prejudice to Plaintiff in permitting the substitution, and further finds that Defendant's Motion to Substitute Exhibits is well taken and should be granted.   Throughout the remainder of this Order, when referencing exhibits from Defendant's Motion for Summary Judgment, the Court refers to the substituted exhibits.

B.  <u>Defendant's Motion for Summary Judgment</u>

In his Complaint, Plaintiff seeks injunctive and declaratory relief to prevent alleged continuing, systemic, and unjustified race discrimination by Defendant, with regard to the retention, terms and conditions of employment, treatment, and

promotion and transfer of African-American employees. *See* Pl.'s Compl., ¶ 1.
Plaintiff alleges severe, pervasive, and ongoing harassment of African-American
employees through longstanding maintenance of a racially hostile work
environment. *See id.* Plaintiff charges that he has never been promoted by
Defendant and that he was denied promotions and transfers by the Defendant
because of his race. *See* Pl.'s Compl., ¶ 21. Plaintiff alleges that he was a African-
American employee of Defendant for over 22 years, and that he retired on or about
October 30, 1997. *See id.,* ¶ 3. In addition to injunctive and declaratory relief,
Plaintiff seeks compensatory and punitive damages. *See id.,* ¶ 1.

In support of its Motion for Summary Judgment, Defendant does not argue
the merits of Plaintiff's claims, but rather contends that Plaintiff's claims are
barred by the doctrine of judicial estoppel and, consequently, that it is entitled to
summary judgment. *See* Def.'s Mem. in Supp. of Mot. for Summ. J., p. 7.

1.    <u>Judicial Estoppel</u>

"Judicial estoppel is 'a common law doctrine by which a party who has
assumed one position in his pleadings may be estopped from assuming an
inconsistent position.'" *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999)
(*citing Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988)). "The purpose
of the doctrine is to protect the integrity of the judicial process, by preventing
parties from playing fast and loose with the courts to suit the exigencies of self
interest." *Id.* (internal quotation marks, parentheses, and citation omitted). It is

important to note that "[b]ecause the doctrine is intended to protect the judicial system, rather than the litigants, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary." *Id.* (*citing Matter of Cassidy,* 892 F.2d 637, 641 & n.2 (7th Cir. 1990)).

Generally, the policy of judicial estoppel is "applied where 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" *Id.* at 206 (*quoting Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953)).  Three requirements for the application of the doctrine of judicial estoppel, as recognized by the Fifth Circuit, are (1) the position of the party against whom estoppel is sought is plainly inconsistent with its prior legal position; (2) the party against whom estoppel is sought convinced a court to accept the prior position; and (3) the party against whom estoppel is sought did not act inadvertently.  *See Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) (*citing In re Coastal Plains*, 179 F.3d at 206-07)).

"Judicial estoppel is particularly appropriate where...a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." *Id.*  The Fifth Circuit has stated that "[i]t goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims." *In re Coastal Plains*, 179 F.3d at 207-08 (*citing* 11 U.S.C. § 521(1)).  In fact, the Fifth Circuit has noted that "the importance of this disclosure

duty cannot be overemphasized." *Id.* at 208 (*citing Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir. 1988) (discussing importance of disclosure to creditors and to bankruptcy court)). The Fifth Circuit has held that, in bankruptcy cases, "the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Id.* at 210 (internal citations omitted).

    2.   <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56 permits any party to a civil action to move for summary judgment upon a claim, counterclaim, or cross-claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law. In applying this standard, the Court views evidence in the light most favorable to the non-movant. *See Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005) (*citing Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997)).

A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *See id.* at 324-25. The non-moving party may not rest upon

-9-

mere allegations or denials in its pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57 (1986).

### a.  Is there any genuine issue of material fact?

In the present case, as explained in more detail below, Plaintiff does not dispute the material facts cited in Defendant's Motion for Summary Judgment. Plaintiff admits that he "filed a bankruptcy petition, which did not include in any of the necessary schedules the existence of a chose of action for employment discrimination pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil rights [sic] Act of 1866, 42 U.S.C. § 1981, as amended."  Pl.'s Mem. in Supp. of Opp'n to Def.'s Mot. for Summ. J., p. 1.   Rather, Plaintiff disputes "the imposition of the harsh equitable doctrine of judicial estoppel." *Id.*  While Plaintiff disputes that, at the time of his bankruptcy filing, he had knowledge of a potential lawsuit, as discussed in greater detail below, he cannot dispute that he had knowledge of the facts giving rise to his claim. Therefore, no genuine issues of material fact exist that would preclude a grant of summary judgment.

### b.  Is the Defendant entitled to prevail as a matter of law?

In determining whether Plaintiff is judicially estopped from asserting the present claims against Defendant, the Court must consider (1) whether Plaintiff's position now is plainly inconsistent with his prior legal position; (2) whether Plaintiff convinced a court to accept that prior position; and (3) whether Plaintiff

did not act inadvertently.  *See Jethroe*, 412 F.3d at 600 (*citing In re Coastal Plains*, 179 F.3d at 206-07)).

Regarding whether Plaintiff's position now is plainly inconsistent with his prior legal position, it is clear in the Fifth Circuit that if a plaintiff fails to disclose a cause of action to the bankruptcy court, the plaintiff takes an inconsistent position by later pursuing the undisclosed cause of action.  *See In re Superior Crewboats*, 374 F.3d 330, 335 (5th Cir. 2004); *see also Jethroe*, 412 F.3d at 600.  The record clearly indicates that in his Chapter 7 bankruptcy, filed on July 29, 1998, Plaintiff did not list his potential discrimination claim in his bankruptcy schedules.  *See* Plaintiff's Bankruptcy Schedules of Assets, Ex. "B" to Def.'s Mot. for Summ. J.   Plaintiff received a "no asset" discharge on December 4, 1998.  *See* Discharge of Debtor, Ex. "D" to Def.'s Mot. for Summ. J.

### (1)  Plaintiff's claims for monetary damages

When an individual files for Chapter 7 protection in bankruptcy court, all of his property, including any causes, or potential causes, of action belonging to the debtor as of commencement of the bankruptcy case, become property of the bankruptcy estate as of commencement of the bankruptcy case.  *See* 11 U.S.C. § 541(a); *Matter of Swift*, 129 F.3d 792, 795 (5th Cir. 1997).

It is undisputed that Plaintiff did not list the present lawsuit, or any potential claim arising out of the facts of this lawsuit, in his bankruptcy schedules. In paragraph 20 of his Bankruptcy Schedule B, Personal Property, Plaintiff was

required to list "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims,"to which Plaintiff marked an "X" in the column indicating "None."  *See* Petition and Schedules, Ex. "B" to Def.'s Mot. for Summ. J., p. 6, at ¶ 20.  On July 28, 1998, Plaintiff signed a declaration of the truth and correctness of the Debtor's Schedules under penalty of perjury.   Pursuant to this representation made to the Bankruptcy Court, Plaintiff received a discharge on December 4, 1998.  *See* Discharge of Debtor, Ex. "D" to Def.'s Mot. for Summ. J., p. 1.

Because it is undisputed that his discrimination claim against Defendant was not listed in his bankruptcy schedules, the threshold inquiry regarding whether Plaintiff was required to list the claim in his bankruptcy turns on whether Plaintiff's claims asserted in this case had accrued at the crucial time, which is the time of his filing the Chapter 7 bankruptcy petition.  "The accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued."  *Matter of Swift*, 129 F.3d 792, 795 (5th Cir. 1997) (*quoting Luling Oil & Gas Co. v. Humble Oil & Refining Co.,* 144 Tex. 475, 191 S.W.2d 716, 721 (1946)).

Plaintiff retired from his employment with Defendant on or about October 30, 1997.  *See* Pl.'s Compl.*,* ¶ 3.  Because all of Plaintiff's claims are related to his employment with Defendant, all of his claims against Defendant had accrued on or before his retirement date of October 30, 1997, which was before he filed his Chapter 7 bankruptcy petition in 1998.  Thus, these claims should have been listed

on Plaintiff's schedules of assets.   Because Plaintiff failed to include these claims

on his bankruptcy petition, his assertion to the bankruptcy court that this asset did

not exist is inconsistent with his current position in this discrimination lawsuit.

Consequently, the first prong of the test for applicability of judicial estoppel, namely

whether the position of the party against which estoppel is sought is plainly

inconsistent with its previous position, is clearly met.   *See Jethroe v. Omnova*

*Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) (holding, in case by former

employee against employer alleging discrimination in violation of Title VII, that

plaintiff's non-disclosure of existence of pending EEOC complaint when she filed her

Chapter 13 petition and of filing of lawsuit during pendency of her bankruptcy

satisfied first element of judicial estoppel); *In re Superior Crewboats, Inc.*, 374 F.3d

330, 335 (5th Cir. 2004) (holding that omission of a personal injury claim from

Chapter 7 debtors' mandatory bankruptcy filings is tantamount to representation

that no such claim existed, and that subsequent action in state court is blatant

inconsistency that readily satisfies first prong of judicial estoppel inquiry).

As for whether Plaintiff convinced a court to accept the prior position, it is

beyond dispute that the Bankruptcy Court granted the requested relief of a

discharge based upon Plaintiff's Schedules and Statement of Financial Affairs.  This

second element of judicial estoppel only requires "that the first court has adopted

the position urged by the party, either as a preliminary matter or as part of a final

disposition." *Coastal Plains*, 179 F.3d at 206 (*quoting Reynolds v. Comm'r of*

*Internal Revenue*, 861 F.2d 469, 473 (6th Cir. 1988)).  By ordering a "no asset"

discharge to Plaintiff, at least in part based on Plaintiff's bankruptcy schedules, this second prong is met.  *See In re Superior Crewboats, Inc.*, 374 F.3d at 335 (finding that the adoption requirement by a court in the judicial estoppel context does not require a formal judgment, and holding that the bankruptcy court's issuance of a "no asset" discharge was an adoption of the debtors' position).

Finally, regarding whether Plaintiff acted inadvertently, "in considering judicial estoppel *for bankruptcy cases*, the failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment."  *Coastal Plains*, 179 F.3d at 210 (emphasis in original) (internal citations omitted).

Because Plaintiff was not named in the EEOC charge filed January 28, 2000, by other plaintiffs currently suing Defendant in related cases before this Court, nor was he identified in this case as a putative class member and/or plaintiff-intervenor until the Motion for Leave to Intervene was filed on July 16, 2002, Plaintiff argues that there was nothing to disclose in his bankruptcy petition filed on July 29, 1998.  *See* Pl.'s Mem. in Supp. of Opp'n to Def.'s Mot. for Summ. J., p. 4.  Plaintiff also asserts that he has not "in any way attempted to undermine the court system."  *Id.* at p. 8.  Plaintiff states that

> he did not realize that he was taking any inconsistent position as there was nothing to disclose at the time of filing his bankruptcy petition.  It is important to note that Plaintiff has no experience with regard to bankruptcy matters.

Pl.'s Mem. in Supp. of Opp'n to Def.'s Mot. for Summ. J., p. 8.

-14-

Plaintiff contends that he "reasonably believed that he had nothing to disclose where there was no cause of action but rather a possibility of lawsuit against Defendant if Plaintiff could foresee into the future." *Id.* Plaintiff also asserts that he was "essentially unschooled with regard to the requirements that were imposed upon him by the Bankruptcy Code...." Pl.'s Mem. in Supp. of Opp'n to Def.'s Mot. for Summ. J. at p. 12. However, "knowledge" in the judicial estoppel context simply means knowledge of facts giving rise to Plaintiff's claim, not of Plaintiff's duty to report his claim to the Bankruptcy Court. *See Coastal Plains*, 179 F.3d at 212.

The law is clear that a lack of awareness of the statutory disclosure duty is not sufficient to avoid the application of judicial estoppel in this context. *See id.*; *see also Kamont v. West*, 83 Fed. Appx. 1, 3  (5th Cir. October 31, 2003) (holding that debtor "must show that she was unaware of the facts giving rise to her claim, not of her duty to report her claim"). Because Plaintiff's claims against Defendant had clearly accrued as of his retirement, and consequently, as of his subsequent Chapter 7 filing bankruptcy, it is inapposite for Plaintiff to argue, and in fact, Plaintiff does not argue, that he did not have knowledge of the facts giving rise to his claim as of his bankruptcy filing.

With respect to the element of "motive for concealment" of the claim, Plaintiff was granted a "no asset" discharge from his debts on December 4, 1998, pursuant to 11 U.S.C. § 727. *See* Discharge of Debtor, Ex. "D" to Def.'s Mot. for Summ. J. On the same date, the Bankruptcy Judge, signed an Order Approving the Trustee's

Report of No Distribution and Closing Estate.  *See* Discharge of Debtor, Ex. "E" to Def.'s Mot. for Summ. J.   In this case, Plaintiff was not required to pay back certain debts he owed by virtue of his "no asset" discharge granted by the Bankruptcy Court.  As a matter of law, motive is inferred from the circumstances, at least with respect to Plaintiff's claims for monetary relief against Defendant.  *See Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 601 (5th Cir. 2005) (holding that debtor plaintiff had an incentive to conceal her claims from creditors because her Chapter 13 bankruptcy confirmation plan did not require her to pay any of her unsecured debt); *see also In re Superior Crewboats, Inc.*, 374 F.3d 330, 336 (5th Cir. 2004) (finding the requisite motivation of Chapter 7 debtors to conceal the claim because they would reap a windfall had they been able to recover on the undisclosed claim without having disclosed it to the creditors, and stating that "[s]uch a result would permit debtors to '[c]onceal their claims; get rid of [their] creditors on the cheap, and start over with a bundle of rights.'") (*quoting Payless Wholesale Distrib., Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir. 1993)).

Within the meaning of the case law cited above, legal precedent compels the conclusion that Plaintiff had both an incentive not to disclose his monetary claims against Defendant, and that he had knowledge of the facts of the present claims. While the Court does not doubt that Plaintiff's professed lack of bad faith and unintentional non-disclosure may indeed be genuine, as a matter of law, they do not qualify as "inadvertence" as contemplated by the Fifth Circuit in *Coastal Plains*.

-16-

*See Benton v. Ryan's Family Steakhouse*, 222 F.R.D. 112, 114 (S.D. Miss. 2004). Therefore, summary judgment must be granted as to Plaintiff's monetary damage claims.

### (2)  Plaintiff's claims for injunctive and declaratory relief

While the Court finds that Plaintiff is judicially estopped from pursuing his claims for monetary relief, Defendant's argument that Plaintiff is judicially estopped from pursuing his claims of declaratory and injunctive relief is less convincing.  *See* Def.'s Rebuttal in Supp. of Mot. for Summ. J., p. 9.  Defendant argues that the Fifth Circuit has not adopted the Eleventh Circuit's exception, which provides that judicial estoppel does not apply to undisclosed claims for injunctive relief, and that "[i]n this circuit, '*[a]ny claim with potential must be disclosed*, even if it is contingent, dependent, or conditional.'"  *See* Def.'s Rebuttal in Supp. of Mot. for Summ. J., p. 9 (*quoting In re Coastal Plains*, 179 F.3d at 208 (emphasis on original) (internal quotation omitted)).   Defendant contends that judicial estoppel bars all of Plaintiff's claims.

While the Fifth Circuit has not addressed this issue, other courts have held that judicial estoppel does not preclude a plaintiff from seeking injunctive relief. *See Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1297 (11th Cir. 2003) (holding that a Chapter 7 debtor-plaintiff's "claim for injunctive relief (*i.e.* her request for reinstatement) would have added nothing of value to the bankruptcy estate even if she properly disclosed it. Therefore, . . . judicial estoppel does not prohibit [plaintiff]

from pursuing any claims for injunctive relief that she may have."); *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1289 & n.3 (11th Cir. 2002) (noting that "[t]he facts of a particular case will always guide a court's analysis of this issue," and holding Chapter 13 debtor-plaintiff was judicially estopped from pursuing monetary damages for his discrimination claim, but holding that plaintiff was not judicially estopped from pursuing injunctive relief, and also noting that "knowledge that the debtor was pursuing a discrimination claim seeking injunctive relief that offered no monetary value to the estate, would not, in all likelihood, have changed the bankruptcy court's determination about how to proceed with the debtor's bankruptcy."); *see also Lett v. Reliable Ruskin*, 2006 WL 2056582, *7 (M.D. Ala. July 24, 2006) (finding that "the key is to examine the demands made by the Plaintiff and then determine if success on the merits would result in any value being added to the debtor Plaintiff's estate," and holding that a Chapter 13 debtor-plaintiff is judicially estopped from seeking relief in the form of a promotion because in Chapter 13 bankruptcy, projected disposable income is allotted to make payments under his bankruptcy plan, and because a promotion would increase debtor-plaintiff's income, which would have added value to his bankruptcy estate) (*citing Burnes*, 291 F.3d at 1289; *Barger*, 348 F.3d at 1297); *Castillo v. Coca-Cola Bottling Co. of Eastern Great Lakes*, 2006 WL 1410045 (E.D. Pa. May 22, 2006).

In Plaintiff's Complaint for Injunctive and Declaratory Relief, the non-monetary demands he makes include a prayer for the Court to:

-18-

(a)     Declare pursuant to 28 U.S.C. §§ 2201 & 2202 the employment practices set forth in paragraphs 17 through 45 to be unlawful and in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. and the Civil Rights Acts of 1866, as amended, 42 U.S.C. § 1981; [and]

(b)     Adjudge, decree, and declare that the practices of NGSS complained of herein are violative of the rights secured to plaintiff by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981....

*See* Pl.'s Compl., p. 15.

Success on the merits of Plaintiff's declaratory judgment and injunctive relief claims would have added no value to his bankruptcy estate. Consequently, Plaintiff would not normally be judicially estopped from pursuing these claims.

Because Plaintiff had not filed an EEOC charge nor intervened in this lawsuit as of the date of his bankruptcy filing, the only question relevant to this judicial estoppel inquiry to which Plaintiff responded was in Paragraph 20 of Bankruptcy Schedule B, Personal Property. Plaintiff was required to list "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims,"to which Plaintiff marked an "X" in the column indicating "None." It is at least arguable that Plaintiff's requests for injunctive and declaratory relief were not encompassed by this representation to the Bankruptcy Court, and in that case, Plaintiff would not have taken an inconsistent position regarding these claims.

Defendant nevertheless argues that summary judgment is appropriate as to all of Plaintiff's claims because Plaintiff has no viable claim for injunctive relief

since he is no longer employed by Defendant.  *See* Def.'s Rebuttal in Supp. of Mot.

for Summ. J., p. 9 (*citing Kamont v. West,* 83 Fed. Appx. 1, 3 (5th Cir. 2003) (holding

that because the plaintiff was no longer employed "she has no claim for injunctive

relief" against the employer); *Gordon v. JKP Enters.*, Inc., 35 Fed. Appx. 386, 2002

WL 753496 (5th Cir. 2002) (holding that injunctive relief was not appropriate as the

plaintiffs were no longer employed) (unpublished)).  While both of these cases cited

by Defendant are non-precedential, unpublished opinions, pursuant to Fifth Circuit

Rule 47.5.4, they are nonetheless persuasive.

In *Gordon*, the Fifth Circuit reviewed the district court's holding that because

the plaintiffs prevailed on their claims of race discrimination under both Title VII

and section 1981, that an injunction barring future discrimination was appropriate.

The injunction issued by the district court was as follows:

> [T]hat Defendants, JKP Enterprises, Inc., d/b/a Caligula XXI and Jerry
> Payne, individually, their employees, servants, agents and assigns are
> hereby ENJOINED from doing the following:
> (1) Creating, implementing and enforcing any policy which limits the
> number of, or denies African-American (Black) dancers from dancing
> during any particular work shift without also limiting or denying
> non-African-American dancers from dancing.  The number of dancers
> per shift shall only be limited, if necessary, by the aggregate total
> number of dancers, without regard to ethnicity.
> (2) Discriminating in the hiring or termination of African-American
> (Black) dancers.
> (3) Selectively enforcing policies on the basis of race.

*Gordon*, 2002 WL 753496, at *6 n.3.

The Fifth Circuit has recognized that equitable relief is available under both

Title VII and section 1981, and that section 2000e-5(g) enables courts to grant a

wide range of relief to combat discriminatory employment practices.  The Fifth

Circuit nevertheless reversed the district court's holding regarding the

appropriateness of injunctive relief, where it determined that plaintiffs no longer

worked at the employment location in question, they did not seek reinstatement,

they expressed no desire to work there again, and the suit was not a class action.

*See id* at *6-*7.  Thus, the Fifth Circuit held that the facts of the case did not

warrant the imposition of injunctive relief.  *See id.*

Similarly, in the present case, it is undisputed that Plaintiff has retired from

employment with Defendant, has not sought reinstatement, has expressed no desire

to work there again, and is not a party to a class action suit.  Therefore, the

injunctive relief requested by Plaintiff is moot and would otherwise be

inappropriate under the facts of this case.  Because there are no genuine issues of

material fact, and because Defendant is also entitled to judgment as a matter of law

on Plaintiff's non-monetary claims, summary judgment must be granted.

## III. CONCLUSION

As discussed in more detail above, the Court finds that Defendant's Motion to

Substitute Exhibits is well taken and should be granted.   The Court further finds

that there are no genuine issues of material fact in this case.  Because it is clear

that Plaintiff is judicially estopped from pursuing his monetary claims against

Defendant and that non-monetary relief is not available to Plaintiff in this

particular case, Defendant's Motion for Summary Judgment is well taken and must

be granted.

**IT IS, THEREFORE, ORDERED AND ADJUDGED,** that, for the reasons cited herein, the Motion of Defendant, Northrop Grumman Ship Systems, Inc., filed August 20, 2007 [458-1], to Substitute Exhibits should be and is hereby **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED,** that, for the reasons cited herein, the Motion for Summary Judgment of Defendant, Northrop Grumman Ship Systems, Inc., filed July 13, 2007 [419-1], should be and is hereby **GRANTED,** and this case is hereby dismissed with prejudice.  All remaining pending motions in this case are hereby **DENIED AS MOOT**.

**SO ORDERED AND ADJUDGED**, this the 29th day of November, 2007.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE